IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

V.                                          CRIMINAL NO.: 1:96cr28 LG-JCG

ANTHONY KIZZEE

### REPLY TO GOVERNMENT'S RESPONSE TO FIRST STEP ACT MOTION

Comes now the Defendant, Anthony Kizzee, by and through his counsel, who files this his Reply to the Government's Response to First Step Act Motion.  Mr. Kizzee requests oral argument before the Court to further present his case for a reduction in his sentence.

### I. BACKGROUND

On June 27, 1996, Anthony Kizzee was indicted, along with others, for one count of conspiring to possess with the intent to distribute cocaine base, also known as "crack" in violation of 21 U.S.C. § 846, as prohibited by 21 U.S.C. § 841(a)(1); six counts of travel in interstate commerce to promote and facilitate the promotion of an unlawful activity in violation of 18 U.S.C. §§ 1952(a)(3) and 2; one count of possession with intent to distribute 750 grams of cocaine base on or about April 7, 1995, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and; a forfeiture count pursuant to 21 U.S.C. § 853.  *See* Indictment, Attached as Exhibit "A". On February 7, 1997, Mr. Kizzee was found guilty of all counts, with the exception of the forfeiture count, which was later dismissed by the assistant United States Attorney.  Importantly, with the exception of the generic term "multi-kilogram quantities" in the conspiracy count, and the 750 grams found in the substantive count occurring on April 7, 1995, no findings were made as to actual quantities by the jury.  *See* Jury Verdict, Attached as Exhibit "B".  Both of these

1

counts, merely track the language of the indictment and it is unknown if the jury was properly instructed to find a quantity in the jury instructions.

Mr. Kizzee's guideline range for the conspiracy count and the substantive count was found to be life imprisonment based on the quantity of crack cocaine found by the probation officer in the pre-sentence report. *See* Pre-Sentence Report, Attached as Exhibit "C". The guideline range for the remaining counts was the statutory maximum of 60 months. *Id*. On April 18, 1997, Mr. Kizzee was sentenced to two life sentences and six terms of 60 months, all to run concurrent to each other. *See* Judgement In A Criminal Case, 1:96cr28GR, Attached as Exhibit "D". Mr. Kizzee has never been granted relief under previous drug amendments to the Sentencing Guidelines, the Fair Sentencing Act of 2010 or the First Step Act.

## II. Argument

### A. Legislative and Judicial History Preceding The First Step Act

In the mid-1980's, Congress enacted harsh penalties for drug offenders. The new law "treated crack cocaine crimes as far more serious" than powder cocaine crimes. *Dorsey vs. United States*, 567 U.S. 260, 266 (2012) (holding that Fair Sentencing Act of 2010 applies to crack crimes committed before the law's enactment, but sentenced afterward). This led to chronic, and inequitable, outcomes. Between 1986 and 2010, nearly one hundred thousand federal defendants, most of whom were African-American, were convicted and sentenced for cocaine base offenses.[1] "During [those] two decades, the [Sentencing] Commission and others in the law enforcement community strongly criticized Congress' decision to set the crack-to-powder mandatory minimum

---

[1] United States Sentencing Commission, Report to Congress: Impact of the Fair Sentencing Act of 2010 at 11, Figure 1A (August 2015), available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/drug-topics/201507_RtC_Fair-Sentencing-Act.pdf#page=5 (last visited on August 2, 2020).

ratio at 100–to–1." *Id.* at 268. The Supreme Court described the Commission's urgent pleas for help, including "four separate reports telling Congress that the ratio was too high and unjustified because, for example, research showed the relative harm between crack and powder cocaine less severe than 100–to–1" and because "the public had come to understand sentences embodying the 100–to–1 ratio as reflecting unjustified race-based differences." *Id.* The old law, said the Supreme Court, fostered a "disrespect for and lack of confidence in the criminal justice system." *Kimbrough v. United States*, 552 U.S. 85, 98 (2007) (holding that a court may vary below the guideline range if it holds a philosophical disagreement with the drug guidelines' policy of punishing crack cases more harshly). In the end, the Commission "asked Congress for new legislation embodying a lower crack-to-powder ratio." *Dorsey*, 567 U.S. at 269.

Congress responded with a pair of corrections. Through the Fair Sentencing Act of 2010, it conceded that the federal drug statutes' penalty scheme for cocaine-base offenses was overly harsh and had a disparate impact on African-American defendants. *Dorsey,* 567 U.S. at 268-69. But that law was not retroactive and did nothing for the thousands of defendants who committed their crack crimes before the new law came along.

Nearly a decade later, Congress finally made the Fair Sentencing Act retroactive to extend the same benefits to defendants who committed crack cocaine crimes prior to the enactment of the Fair Sentencing Act. Congress has now taken steps, in both 2010 and in 2018, to right historical wrongs. Indeed, our current President said this of the First Step Act: The new law "rolls back [a law] that was so devastating to so many and that disproportionately impacted the African American community."[2]

---

[2] President Donald J. Trump, *Remarks by President Trump at 2019 Prison Reform Summit and FIRST STEP Act Celebration* (Apr. 1, 2019), found at https://www.whitehouse.gov/briefings-

Section 404 of the First Step Act aimed to remedy the injustices by ensuring that every federal crack defendant sentenced under the old, racially-disparate sentencing scheme received at least one opportunity to have a federal judge measure the appropriate sentence for his crime as if the Fair Sentencing Act of 2010 had been in place at the time. The government's opposition here directly contradicts the purpose and intention of the First Step Act. Indeed, one of the key authors of the First Step Act, Dick Durbin, has expressed frustration that the Department of Justice "is actively undermining the First Step Act and fighting to oppose retroactive Fair Sentencing Act relief for eligible individuals." [3] In that statement, Senator Durbin stated that, "I wrote the provision of the *First Step Act* that reduces these unjust sentences for nonviolent offenders, and the position that the Justice Department is taking is just plain wrong."

**B. First Step Act**

Section 404 of the First Step Act of 2018, titled "Application of Fair Sentencing Act", made the Fair Sentencing Act of 2010 retroactive. First Step Act, 132 Stat. at 5222. Specifically, Section 404(b) of the First Step Act states: "A court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *Id*. Section 404(a) defines a "covered offense" as "a violation of the Fair Sentencing Act of 2010, . . . that was committed before August 3, 2010." *Id*.

"The first inquiry in evaluating a motion under section 404 is whether the defendant has a 'covered offense.'" *United States v. Jackson*, 945 F.3d 315, 319 (5th Cir. 2019). "[W]hether a

---

statements/remarks-president-trump-2019-prison-reform-summit-first-step-act-celebration/ (last visited August 2, 2020).

[3] Durbin, Dick, Press Release dated Nov. 19, 2019, *available at* https://www.durbin.senate.gov/newsroom/press-releases/durbin-to-bop-director-why-is-doj-undermining-the-first-step-act (last accessed August 2, 2020).

defendant has a 'covered offense' under section 404(a) depends only on the statute under which he is convicted. If he was convicted of violating a *statute* whose penalties were modified by the Fair Sentencing Act, then he meets the aspect of a 'covered offense.'" *Id*. at 320.

The Fair Sentencing Act of 2010, amended the threshold amounts for crack cocaine from 50 grams to 280 grams and 5 grams to 28 grams. *See* 18 U.S.C. § 841(b)(1)(A)(iii) and (b)(1)(B)(iii). In Mr. Kizzee's case, neither the conspiracy count nor the substantive count referenced a statutory quantity under § 841(b) or a statute that would direct the reader to the appropriate statute to determine quantity. *See* Indictment. Regardless, Mr. Kizzee's statute of conviction is a "covered offense" under the First Step Act as the statute for which he was convicted in 1997 had its penalties modified by the Fair Sentencing Act.

Finally, it is important to note that the First Step Act of 2018 does not allow the court to consider a motion under this section of the sentence had been previously imposed or reduced in accordance with the Fair Sentencing Act or a motion had been made and denied under the First Step Act. 132 Stat. at 5222. Mr. Kizzee's sentence was imposed prior to the passage of the Fair Sentencing Act, it has not be reduced as a result of that Act and this motion is his first under Section 404 of the First Step Act.

Because Mr. Kizzee was convicted of a "covered offense", that is, he was convicted of violating a statute whose penalties were modified by the Fair Sentencing Act, and because he has not previously filed a motion to reduce his sentence under the First Step Act, he is eligible for a reduction in his sentence. *See Jackson*, 945 F.3d at 320.

**C. Government's Argument**

It is unclear, based on their response, whether or not the Government recognizes that Mr. Kizzee was convicted of a "covered offense." The government does argue, however,

that Mr. Kizzee was held accountable for over 100 kilograms of crack cocaine and even that would have triggered the mandatory minimum "were it alleged post-2010." *See* Government's Response to First Step Act Motion, Dkt. #232, p. 2, ¶ 3.  In doing so, the Government is arguing that the quantity of drugs found in the PSR supported the mandatory minimum and that they could have even charged Mr. Kizzee had the charge originated after the passage of the Fair Sentencing Act.  Both positions have been soundly rejected by the Fifth Circuit.

In *United States v. Jackson*, the Court discussed the various approaches the government took in that case, and others, that a "covered offense turned on facts specific to that particular defendant's offense conduct.  945 F.3d at 319.  In Mr. Jackson's case, the government initially took the position that his offense was not a "covered offense" because the PSR found him to be responsible for 402.2 grams of crack, which exceeded the new 280 gram requirement, though the government seemed to concede that his offense was covered in briefing.  *Id*.  The Court went on, however, to discuss the government's argument that a "covered offense" turned on facts specific to the conduct when it noted that, under that theory, if a jury convicted for fifty or more grams but the PSR later found 500 grams were involved then that particular defendant did not have a "covered offense".  *Id*.  The Court was blunt in its rejection of that theory:  "That approach does not comport with the ordinary meaning of the statute, however."  *Id*.  The court ultimately found that "a 'covered offense' under section 404(a) depends only on the statute under which he was convicted."  *Id*. at 320.  It is irrelevant what the PSR ultimately found or what the government could have charged.

Mr. Kizzee was convicted under a statute whose penalties were later modified by the Fair Sentencing Act, his sentence has not been amended pursuant to that Act or the Amendments

made by the act and he has not previously sought a reduction under the First Step Act. He is, therefore, eligible for resentencing.

**D. Re-sentencing**

    **i. Standard**

First Step Act re-sentencings are done pursuant 18 U.S.C. § 3582(c)(1)(B) which allows a court to "modify an imposed term of imprisonment to the extent expressly permitted by statute …". Under the First Step Act the court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). In imposing a sentence, the court "shall consider the factors set forth in section 3553(a) to the extent they are applicable". 18 U.S.C. § 3582(a).

In *United States v. Hegwood*, the Fifth Circuit seemed to exclude plenary re-sentencing when it held that courts are only required to consider the "3553(a) factors 'to the extent they are applicable'", holding that "[t]he district court decides on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant landscape only by the changes mandated by the 2010 Fair Sentencing Act." 934 F.3d 414, 418 (5th Cir. 2019). This position is an outlier among other Circuit Courts of Appeal in limiting that a court may only consider at a First Step Act re-sentencing solely the changes mandated by the 2010 Fair Sentencing Act of 2010, and not post-conviction rehabilitation. *See, e.g. United States v. Holloway*, 956 F.3d 660 (2nd Cir. April 24, 2020); *United States v. Chambers*, 957 F.3d 734 (4th Cir. April 23, 2020); *United States v.* Wirsing, 943 F.3d 175 (4th Cir. 2019); *United States v.* Venable, 943 F.3d 187 (4th Cir. 2019); *United States v. Allen*, 956 F.3d 355 (6th Cir. April 14, 2020); *United States v. Beamus*, 943 F.3d 789 (6th Cir. 2019); *United States v. Shaw*, 957 F.3d 734 (7th Cir. April 28,

2020). Even the Fifth Circuit recognized its outlier position when it stated in *Jackson* that "[w]e do not hold that the court *cannot* consider post-sentencing conduct—only that it isn't required to." 945 F.3d at 322, n.7 (*emphasis* in original).

At least one district court within this Circuit has recognized that they should consider post-sentencing conduct when determining whether relief is warranted for a reduction under the First Step Act. *See, e.g., United States v. Curry*, 429 F.Supp.3d 279, 283 (W.D. La. 2019); *United States v. Robinson*, 2020 WL 1811963 at *2, (W.D. La. Apr. 8, 2020); *United States v. Wines*, 2020 WL 1490721 at *3, (W.D. La. March 25, 2020); *United States v. Odom*, 2020 WL 1905294 at *5, (W.D. La. April 17, 2020); *United States v. Flakes*, 2020 WL 4342227 at *3, (W.D. La. July 27, 2020): *United States v. Sutton*, 2020 WL 3073245 at *2, (W.D. La. June 10, 2020): *United States v. Dantzler*, 2020 WL 1970793 at *3, (W.D. La. April 24, 2020). Consideration of a defendant's post-sentencing conduct is supported by *United States v. Pepper* which found that courts "may consider "evidence of a defendant's rehabilitation since his prior sentencing' to support a downward variance form an initial sentence set aside on appeal. 562 U.S. 476, 490 (2011).

**ii. Relief is warranted**

Mr. Kizzee provided the Court with numerous documents in his original motion, showing the strides he has made in rehabilitating himself over the course of his incarceration. *See* Motion for Sentence Reduction and Exhibits, Dkt. #230. He has completed over 100 courses (119, as of the filing of his motion) in order to better educate himself and prepare for a life outside of prison. *See* Exhibit D, Dkt. #230. These classes included job skills, such as OSHA certification and construction training, computer skills, such as training on Access, Excel, Microsoft Word and typing, and parenting skills. *Id*. Though he had only a high school degree, with some college

credits, he obtained associate degrees in Business, Social and Behavioral Science, and American Studies.  *See* Exhibit B, Dkt. #230.  He has received numerous Certificates of Achievement in course designed to help him reenter society such as, Living Free Reentry Career Course, Basic and Advance Courses in Nonviolent Conflict Resolution and various Pre-Release Education and Planning courses.  *See* Exhibit E, Dkt. #230.

Mr. Kizzee is currently employed as a projectionist, though he previously served as a suicide companion while at FCI-I Victorville.  *See* Motion and Exhibit F, Dkt. # 230.  During his time in Victorville the chaplain, Reverend John David Long, wrote a memorandum for Mr. Kizzee's official file documenting the progress he had made to rehabilitate himself and become a productive member of society, only the third one Reverend Long had written in 22 years as a prison chaplain.  *See* Exhibit F, Dkt. #230.  To support that commitment, Mr. Kizzee has only had one incident report in the last twenty years.  *See* Motion at p. 13, Dkt. #230.

When Anthony Kizzee was arrested for this charge on July 16, 1996, he was 36 years old.  He has now been in custody for 24 years and turned 60 only a few days ago.  In December 2017, the United States Sentencing Commission released its fourth study on recidivism and age, using a follow-up period of 8 years for re-arrest, reconviction and re-incarceration for felonies, misdemeanors and "technical" violations of supervised release.  The Effects of Aging on Recidivism Among Federal Offenders, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf  In that study, the Sentencing Commission found that offenders aged 60-64 were less likely to be rearrested than those offenders 35-39 (Mr. Kizzee's age of arrest),  18.9% to 50.1%.  *Id.* at p. 14.  Less likely to be reconvicted, 11.4% to 31.3%, and less likely to be re-incarcerated, 8.8% to 24.2%.  When you factor in age and education level, the rate of re-arrest, reconviction and re-incarceration dropped

9

even further. Only 11.6% of college graduates, aged 60 or older were rearrested, 5.8% were reconvicted and 4.2% were re-incarcerated. *Id*. at A-39. Based on the Sentencing Commissions study, Mr. Kizzee's age and education place him at the lowest end for risk of recidivism and, thus, a perfect candidate for re-sentencing under the First Step Act.

Should Mr. Kizzee be released he plans to reconnect with his wife, children, grandchildren and other family , living with them in California. His education pursuits while incarcerated will allow him to obtain employment immediately in various fields. Family and employment will sustain him in his goal to never return to prison.

### III. CONCLUSION

Anthony Kizzee is serving a life sentence for a non-violent drug offense. Under the First Step Act he is eligible for a reduction in sentence because he was convicted prior to August 3, 2010, under a *statute* whose penalties were changed by the Fair Sentencing Act of 2010 and his sentence has never been reduced under the Fair Sentencing Act or amendments. Mr. Kizzee's work toward rehabilitation and training over the last 24 years, along with his age and unlikelihood that he will recidivate, support a reduction in his sentence under the 18 U.S.C. § 3553(a) factors on both the conspiracy charge and the substantive charge of his original indictment. For these reasons, Mr. Kizzee requests that his Guideline range be adjusted to 262-327 months based on the jury's verdict, that his statutory maximum be adjusted to 40 years and that his sentence be reduced to 327 months, per his original Motion in this matter.

Respectfully submitted this the 3rd day of August, 2020.

                              ANTHONY KIZZEE, Defendant

BY:   *s/ Michael L. Scott*
        Michael L. Scott, MB#101320
        Assistant Federal Public Defender
        200 South Lamar St., Suite 200-N
        Jackson, MS 39201

                                      Telephone: 601-948-4284
                                      Facsimile: 601-948-5510
                                      Email: mike_scott@fd.org

## **CERTIFICATE OF SERVICE**

I, Michael L. Scott, hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using ECF system which sent notification of such filing to all attorneys of record.

        This the 3rd day of August, 2020.

                                      *s/ Michael L. Scott*
                                      Michael L. Scott
                                      Assistant Federal Public Defender